UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **AUSTEN JOHN ANGERS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 24-688** |
| **LAZARO FRANCO, ET AL.** | **SECTION "O"** |

### ORDER AND REASONS

Before the Court in this car-accident case removed based on diversity jurisdiction is the motion[1] of Defendant Farmers Insurance Company, Inc. to dismiss Plaintiff Austen John Angers's complaint for insufficient service of process under Federal Rule of Civil Procedure 12(b)(5). Farmers admits it was (eventually) served under Louisiana law before removal.[2] But Farmers insists the Court must dismiss Angers's claims because Angers violated Articles 1201(C) and 1672(C) of the Louisiana Code of Civil Procedure by failing to timely "request[ ]" service on Farmers within 90 days after Angers first sued in state court.[3] Because Angers timely "requested" service on Farmers, the Court **DENIES** Farmers' motion to dismiss.

### I.  BACKGROUND

This case arises from personal injuries Angers alleges he suffered when his car was rear-ended by a truck driven by Lazaro Franco and insured under a Farmers automotive liability insurance policy.[4] Because the motion before the Court turns on the timeliness of Angers's "request[ ]" to serve Farmers, precise dates are important.

---

[1] ECF No. 4.
[2] ECF No. 1 at 5 ¶ 13.
[3] ECF No. 4-1 at 2–5.
[4] ECF No. 1-2 at ¶¶ 1–13.

Angers sued Farmers and others in Orleans Parish Civil District Court on October 11, 2023.[5] In his petition, Angers asked the clerk to "please serve" Farmers through the Louisiana Secretary of State.[6] Angers's counsel mailed the petition and a transmittal letter to the state court the next day; the transmittal letter asked the clerk to "have the defendants served as stated."[7] Angers's counsel paid $524.50 in filing fees and costs by a check dated October 12 and deposited on October 17.[8]

Six days later, on October 26, the Orleans Parish Civil District Court Clerk's Office sent Angers's counsel a letter acknowledging his "request[ ] to reissue service of the Petition" and stating that he owed $48 for "certified copies."[9] Angers's counsel paid that sum by a check dated November 28 and deposited on December 4.[10]

On November 30, a representative of Angers's counsel's office called both the Clerk's Office and the Orleans Parish Sheriff's Office to ask about the status of service.[11] The Sheriff's Office explained that "they are waiting for three checks" in relation to serving Farmers through the Louisiana Secretary of State.[12]

---

[5] *Id.* at ¶ 1.
[6] ECF No. 1-2 at 4.
[7] ECF No. 15-1 at 1.
[8] ECF No. 15-4 at 1.
[9] ECF No. 15-5 at 1.
[10] *See id.*; ECF No. 15-6 at 1.
[11] ECF No. 15-7 at 1.
[12] *Id.*

A week later, on December 7, Angers's counsel mailed those checks and a transmittal letter to the Clerk's Office.[13] The transmittal letter specifically asked the Clerk's Office to "have defendant Farmers Insurance Company, Inc. re-served with the attached Petition for Damages" through the Louisiana Secretary of State.[14]

Two weeks later, on December 20, the Clerk's Office acknowledged Angers's counsel's December 7 letter and informed Angers's counsel that he owed $12 for certified copies in connection with the re-issuance of Angers's petition.[15]

On December 22, a representative from Angers's counsel's office called the Sheriff's Office and "confirmed that they did receive the checks to serve Farmers[.]"[16]

Angers's counsel paid the $12 certified-copy fee that was requested on December 20 by a check dated January 5, 2024 and deposited on January 11.[17] The Clerk's Office's records reflect that the certified-copy fee was paid on January 10.[18]

Farmers was served on February 19[19] and removed the case on March 19.[20]

A week after removal, Farmers moved the Court to dismiss the claims against it under Rule 12(b)(5) for insufficiency of service of process.[21] Angers opposes.[22]

---

[13] ECF No. 15-8 at 1; *see also* ECF No. 15-10 at 1–5.
[14] *Id.*
[15] ECF No. 15-11 at 1.
[16] ECF No. 15-19 at 31.
[17] ECF No. 15-13; *see also* ECF No. 15-14.
[18] ECF No. 4-6 at 1.
[19] ECF No. 1 at 2 ¶ 2; *see also* ECF No. 4-1 at 2; ECF No. 1-3.
[20] *See generally* ECF No. 1.
[21] ECF No. 4.
[22] ECF No. 15-11.

## II. ANALYSIS

Farmers contends that the Court must dismiss Angers's claims under Rule 12(b)(5) because Angers failed to timely "request[ ]" service. The Court disagrees.

Farmers' Rule 12(b)(5) motion "turns on the legal sufficiency" of Angers's "service of process" on Farmers. *Holly v. Metro. Transit Auth.*, 213 F. App'x 343, 344 (5th Cir. 2007) (per curiam). As "[t]he party making service," Angers "has the burden of demonstrating its validity" in response to Farmers' objection. *Id.* (citing *Carimi v. Royal Caribbean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992)). Because Angers served Farmers before this case was removed to this Court from Louisiana state court, Louisiana law controls the question whether service was proper. *See Freight Terminals, Inc. v. Ryder Sys., Inc.*, 461 F.2d 1046, 1052 (5th Cir. 1972).

Louisiana law required Angers to "request[ ]" service on Farmers within 90 days of filing suit. *See* LA. CODE CIV. PROC. ANN. art. 1201(C). If Angers failed to timely "request[ ]" service on Farmers, *id.*, the Court "shall" dismiss this case without prejudice as to Farmers unless Angers shows "good cause . . . why service could not be requested" timely. *See* LA. CODE CIV. PROC. ANN. art. 1672(C). Because Angers sued on October 11, 2023, Louisiana law required Angers to "request[ ]" service on Farmers by January 9, 2024. *See* LA. CODE CIV. PROC. ANN. art. 1201(C).

Here, Farmers contends that Angers failed to timely "request[ ]" service because Angers did not pay all service-related fees until January 10—91 days after Angers first sued and one day later than Article 1201(C) allowed.[23] The premise of

---

[23] ECF No. 4-1 at 2–5.

4

Farmers' argument is that a proper "request[ ]" requires payment of "all" service fees and costs.[24] From that premise, Farmers reasons that, because Angers's counsel waited until January 10 to pay a $12 certified-copy fee the state court sought from him on December 20, no "request[ ]" was made until January 10—one day too late.[25]

The Court is not persuaded. The Louisiana Code of Civil Procedure does not define "request[ ]" as that term is used in Article 1201(C). But the Supreme Court of Louisiana has interpreted the same term as it is used in another service-of-process provision, LA. STAT. ANN. § 13:5107(D)(2). *See Tranchant v. State*, 2008-978, p. 10–11 (La. 1/21/09); 5 So. 3d 832, 837–38. Interpreting "request[ ]" under Section 13:5107(D)(2), *Tranchant* explains that service is "deemed 'requested' when the clerk receives service instructions from the plaintiff." *Id.* at 836. Louisiana's intermediate appellate courts have applied *Tranchant*'s interpretation of "request[ ]" under Section 13:5107(D)(2) to interpret "request[ ]" under Article 1201(C). *See, e.g.*, *Walker v. GoAuto Ins. Co.*, 2020-331, p. 8–10 (La. App. 4 Cir. 6/10/21); 323 So. 3d 918, 922–23.

Complicating matters, however, Louisiana's intermediate appellate courts have split on the question whether a "request[ ]" requires payment of all service fees. The First Circuit says "yes"; the Fourth Circuit says "no." *Compare, e.g.*, *DaRouse v. P.J.'s Coffee of New Orleans, LLC*, 2024-0689, p. 12 (La. App. 4 Cir. 12/17/24); 2024 WL 5134401, at *6 (holding that service was "requested" despite plaintiff's failure to timely pay service fees to sheriff) *with Methvien v. Our Lady of the Lake*, 2020-1081,

---

[24] *Id.*
[25] *Id.*

5

p. 4–5 (La. App. 1 Cir. 4/16/21); 318 So. 3d 329, 332–33 (holding that service was not "requested" because plaintiff failed to timely pay service fees to sheriff).

For its part, the Supreme Court of Louisiana has seemingly sided with the First Circuit: A "request[ ]" requires payment of "the required service fees." *Carrie v. S. Univ. at New Orleans*, 2024-060, p. 1 (La. 3/12/24); 380 So. 3d 555, 555 (Mem.) (per curiam). Rendering judgment dismissing a petition under Article 1672(C), the Supreme Court of Louisiana held that the plaintiff "did not make a proper request for service" because the plaintiff "failed to pay the required service fees" within 90 days of filing her supplemental petition. *Id*. In so holding, the court approvingly quoted First Circuit precedent "find[ing] that a request for service without payment of required fees, or without leave of court excusing such payment because of pauper status, simply is no proper request at all." *Id*. (quoting *Jenkins v. Larpenter*, 04-318 (La. App. 1 Cir. 3/24/05); 906 So. 2d 656, 659, *writ denied*, 05-1078 (La. 6/17/05); 904 So. 2d 711 (quotation marks omitted)). In a footnote, the court acknowledged that an influential Fourth Circuit opinion—*Walker*—"reached a seemingly different result." *Id*. at n.2. But the court found *Walker* "factually distinguishable" because the plaintiff there "timely forward[ed] the payment necessary to effect service on defendants." *Id*.

The same is true here. The Court assumes—without deciding—that *Carrie*'s interpretation of "request[ ]" controls and thus that a "request[ ]" requires the plaintiff to "timely forward the payment necessary to effect service on defendants." *Id*. Even under that more stringent standard, the record here supports a finding that Angers's counsel timely "requested" service on Farmers because Angers's counsel "timely

6

forward[ed] the payment necessary" for the Sheriff's Office to serve Farmers. *Id.* Indeed, according to a representative of Angers's counsel's office, and unrebutted by Farmers here, the Sheriff's Office had "receive[d] the checks to serve Farmers" by December 22, 2023—less than 90 days after Angers first sued on October 23.[26]

The cases on which Farmers relies do not change the Court's analysis. *Ayers v. Goodwill Industries* is not instructive because there, unlike here, the plaintiff "took no action on the record" during a more-than-three-year period, and the plaintiff's counsel simply "assumed, without checking the district court record, that no filing fee was due, and that service of process would be made as requested." 2003-1576, p. 2–3 (La. App. 4 Cir. 3/10/04); 870 So. 2d 348, 349. Unlike plaintiff's counsel in *Ayers*, Angers's counsel made reasonably diligent—if imperfect—efforts to promptly pay all service-related fees requested. *Joseph v. North American Risk Services* is off-point for similar reasons. 2011-1417, p. 8 (La. App. 4 Cir. 2/29/12); 86 So. 3d 752, 757. Unlike Angers's counsel here, plaintiff's counsel there "failed to check the record to ensure service was made," merely "presumed that [service] would be made," and did not request service to be reissued until "over four years" after the operative petition was filed. *Id.* Finally, *Jenkins v. Larpenter* does not compel a contrary conclusion on this record because there, unlike here, the plaintiff "failed to pay the required fee for well over ten months after being notified" that his *in forma pauperis* application had been denied. 2004-318, p. 5 (La. App. 1 Cir. 3/24/05); 906 So. 2d 656, 659.

---

[26] ECF No. 15-19. Even if the Court assumes that the $12 courtesy-copy fee requested on December 20 is a "payment necessary to effect service," the record supports a finding that Angers's counsel "timely forward[ed]" that payment on January 5, 2024. *See* ECF No. 15-19 at 30.

7

### III. CONCLUSION

Accordingly,

**IT IS ORDERED** that Farmers' motion[27] to dismiss is **DENIED**.

New Orleans, Louisiana, this 26th day of February, 2025.

_____
BRANDON S. LONG
UNITED STATES DISTRICT JUDGE

---

[27] ECF No. 4.