UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| AUSTEN JOHN ANGERS | * | CIVIL ACTION |
| VERSUS | * | NO. 24-688 |
| LAZARO FRANCO, ET AL. | * | SECTION "O" (2) |

**ORDER AND REASONS**

Pending before me are two motions: (1) Motion to Compel Production of Documents and Records, Motion to Compel Answers to Discovery, Motion to Establish Rules for Completion of Depositions, and Order Forbidding Any Further Spoliation or Records or Documents and Documents Identifying Whereabouts of Defendant Lazaro Franco filed by Plaintiff Austen John Angers; and (2) Motion for Protective/Confidentiality Order filed by Defendants Lazaro Franco and Farmers Insurance Company, Inc. ECF Nos. 80, 85. The parties timely filed Opposition Memoranda and Reply Memoranda as to the Motion to Compel. ECF Nos. 86, 90. Plaintiff filed an untimely Opposition to the Motion for Protective Order. ECF No. 91.

No party requested oral argument in accordance with Local Rule 78.1, and the court agrees that oral argument is unnecessary. Having considered the record, the submissions and arguments of counsel, and the applicable law, Plaintiff's motion to compel is GRANTED IN PART AND DENIED IN PART as stated herein and Defendants' motion for protective order is GRANTED as stated and for the reasons herein.

**I.    BACKGROUND**

Plaintiff filed suit to recover for personal injuries sustained in a car accident involving a car driven by Defendant Lazaro Franco and insured by Defendant Farmers Insurance Company.

ECF No. 1-2 ¶¶ 3-5.[1]  When counsel could not agree on scheduling depositions, the undersigned held an expedited status conference and ordered the parties to select a date for Franco's deposition by the end of July 2025, with Plaintiff's deposition to immediately follow.  ECF No. 46.  Plaintiff began Franco's deposition via zoom on July 29, 2025, but encountered technical difficulties resulting in the suspension of the deposition.  ECF No. 80 ¶ 6.  During a subsequent expedited status conference, Plaintiff advised that the deposition was suspended because Franco failed to produce requested documents, and the undersigned encouraged counsel to review the sample protective order on the Court's website.  ECF No. 55.

Plaintiff filed this motion to compel, asserting that same was necessary "because of new information on parties who may be liable and theories of recovery and evidence relating to respondeat superior and course and scope of employment."  ECF No. 80-1 at 2.[2]  Plaintiff asserts that he requires financial and employment documents "to confirm liability of parties sought to be added in the motion to amend."  *Id.*  Plaintiff argues that Franco has failed to produce his debit card, bank account and related information but testified during his deposition that he used a debit card to pay for gas and other work expenses but has thrown the receipts away.  *Id.*; ECF No. 80 ¶¶ 9-10.  Plaintiff seeks an order compelling production of Franco's bank records, debit cards, checks, check stubs, expense reimbursement records, payroll deduction records and related information to determine whether he was acting in the course and scope of his employment such that his employer may be vicariously liable.  ECF No. 80-1 at 2, 4, 6.  Plaintiff also asks that Franco provide a more complete response to Interrogatory No. 8(C), which asked whether he was "on call at the time of the accident, and if so, to whom" and to which Franco responded by stating he was

---

[1] Plaintiff also sought to recover for additional damages sustained to the vehicle while at the Gerber Collision & Glass yard, but he settled that claim.  ECF No. 1-2 ¶¶ 5-6; ECF Nos. 24, 25.
[2] Although Plaintiff asks that the motion be heard with other matters on September 3, 2025, Plaintiff did not cure his filing deficiencies until September 10, 2025, which was after that hearing.  ECF No. 80 ¶ 13.

2

not on a cell phone, and that previously prior incorrect information regarding Franco's employer be corrected. *Id.* at 4-5.

Defendants oppose the motion, arguing that Plaintiff's motion is based on misrepresentations, half-truths, and unsound legal authorities. ECF No. 86 at 1.[3] As to the requested documents, Franco notes that he has not had any other accidents, reiterates that he did not keep gas and food receipts and was not reimbursed for same by his employer, and cannot produce that which does not exist. *Id.* at 5-7. He argues spoilation has no application to this case where his trip from Oklahoma to New Orleans occurred weeks before the accident and he simply did not maintain the requested documents or submit them to an employer for reimbursement. *Id.* at 8-9. Defendants assert that the answers provided are full and complete and object to Plaintiff's efforts to make new demands via email rather than via formal discovery requests. *Id.* at 9-14.

Plaintiff filed a Reply Memorandum addressing issues raised between counsel in emails and other communications as well as irrelevant personal attacks. ECF No. 90 at 1-4. Plaintiff asserts that defense counsel intentionally misled him regarding the identity of Franco's employer, and that Franco has failed to provide complete answers in discovery. *Id.* at 4-5. Plaintiff now asks that Franco provide full and complete responses to Interrogatory No. 1 and all financial records including W2's, 1099s, tax returns, payroll receipts, check stubs, payroll debits and credits, deposits, checks, purchases, payroll deductions and reimbursements and all relevant records to course and scope such as transportation credits and debits like fuel and repairs. *Id.* at 6-8. Plaintiff also seeks information regarding Franco's whereabouts since the initiation of litigation and temporary addresses. *Id.* at 9-10.

---

[3] Defendants argue that Franco testified that he did not maintain gas and food receipts nor did his employer reimburse him for same. ECF No. 86 at 2 (citing Franco Deposition, ECF No. 80-3 at 22-25, 26-31). They further argues that the deposition was suspended due to technical issues, not the failure to produce documents. *Id.* at 3.

Defendants ask the Court to enter a protective order to govern the production of certain financial information. ECF No. 85. Plaintiff does not oppose that request but seeks a blanket protective order to encompass more than the documents identified by Defendants. ECF No. 91.

## II. APPLICABLE LAW AND ANALYSIS

### A. Scope of Discovery

Rule 26 of the Federal Rules of Civil Procedure authorizes the parties to

> obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.[4]

At the discovery stage, relevance includes "[a]ny matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."[5] The threshold for relevance at the discovery stage is lower than the threshold for relevance of admissibility of evidence at trial.[6] Although the relevancy threshold is lower during discovery, it is not unlimited.

The relevancy evaluation necessarily begins with an examination of the pending claims and defenses.[7] As the comments to Rule 26 make clear, "requiring relevance to a claim or defense 'signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop

---

[4] FED. R. CIV. P. 26(b)(1).
[5] *Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 590 (S.D. Tex. 2011) (citations omitted).
[6] *Id.* (citations omitted). This broader scope is necessary given the nature of litigation, where determinations of relevance for discovery purposes are made well in advance of trial; facts that are not considered in determining the ultimate issues may be eliminated in due course of the proceeding. *Id.* at 590 n.5 (citation and quotations omitted).
[7] *Volvo Trucks N. Am., Inc. v. Crescent Ford Truck Sales, Inc.*, No. 02-3398, 2006 WL 378523, at *4 (E.D. La. Feb. 17, 2006) (Zainey, J.).

new claims or defenses that are not already identified in the pleadings.'"[8] The role of discovery is to find support for properly pleaded claims, not to find the claims themselves.[9]

Plaintiff's original state court petition alleges that Franco was acting in the course and scope of his employment at the time of the accident. ECF No. 1-2 ¶ 11. He named a fictitious defendant (DEF Company) as Franco's employer. *Id.* ¶ 11. Accordingly, based on the claims asserted, Plaintiff is entitled to conduct discovery regarding the identity of Franco's employer and/or whether he was acting in the course and scope of his employment at the time of the accident.

Relevance, however, is not the only consideration under Rule 26. Rule 26(b) also expressly requires that relevant evidence also be proportional to the needs of the case. In addition, Rule 26(b)(2)(C) mandates that the Court limit the frequency or extent of discovery otherwise allowed, if it determines: (1) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery had ample opportunity to obtain the information; or (3) the proposed discovery is outside the scope of Rule 26(b)(1).[10]

### A. Duties in Responding to Discovery Requests

#### 1. Interrogatories

A party served with written discovery must fully answer each request to the full extent that it is not objectionable and affirmatively explain what portion of an interrogatory or document request is objectionable and why, affirmatively explain what portion of the interrogatory or document request is not objectionable and the subject of the answer or response, and affirmatively

---

[8] *Waste Mgmt. of La., LLC v. River Birch, Inc.*, No. 11-2405, 2017 WL 2271982, at *4 (E.D. La. May 24, 2017) (quoting *Whitney v. Krystal Co.*, No. 10-773, 2012 WL 777161, at *1 (M.D. Ala. Mar. 7, 2012)); *see* FED. R. CIV. P. 26 advisory committee's GAP report to 2000 amendments.
[9] *Torch Liquidating Tr. ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 392 (5th Cir. 2009) (citations omitted); *see also Waste Mgmt. of La.*, 2017 WL 2271982, at *4 ("Federal Rule of Civil Procedure 26(b)(1) makes clear that any discovery must be relevant to a party's claim or defense.").
[10] FED. R. CIV. P. 26(b)(2)(C)(i)–(iii).

explain whether any responsive information or documents have been withheld.[11]  For objections, the party must state how the objection "relates to the particular request being opposed, and not merely that it is overly broad and burdensome or oppressive or vexatious or not reasonably calculated to lead to the discovery of admissible evidence."[12]  Any objection must clearly state how the information sought is not relevant to any claim or defense, or how the request is overbroad, burdensome or oppressive.[13]

Rule 33 requires a party to pull together complete answers by "reviewing all sources of responsive information reasonably available to [it] and providing the responsive, relevant facts reasonably available."[14]  Thus, while a party is not required to make an extensive investigation in responding to an interrogatory, the party must review all sources of responsive information reasonably available and provide the responsive, relevant facts reasonably available.[15]  Where an interrogatory answer "'as a whole disclose[s] a conscientious endeavor to understand the question[ ] and to answer fully [that question],' a party's obligation under Rule 33 is satisfied."[16]

Interrogatories must be answered separately, in writing and under oath.[17]  Verified interrogatory responses have evidentiary value.[18]  "[I]nterrogatories serve not only as a discovery device but as a means of producing admissible evidence; there is no better example of an admission of a party opponent, which is admissible because it is not hearsay (FED. R. EVID. 801(d)(2)), than

---

[11] *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 580 (N.D. Tex. 2018) (citation omitted).
[12] *Cheshire v. Air Methods Corp.*, No. 15-933, 2015 WL 7736649, at *2 (W.D. La. Nov. 30, 2015) (internal quotations and citations omitted).
[13] *Chevron Midstream Pipelines LLC v. Settoon Towing, LLC*, Nos. 13-2809, 13-3197, 2015 WL 269051, at *3 (E.D. La. Jan. 20, 2015) (noting objections are boilerplate and insufficient if they merely state "the legal grounds for the objection without: (1) specifying how the discovery request is deficient and (2) specifying how the objecting party would be harmed if it were forced to respond." (citation omitted)).
[14] *Lopez*, 327 F.R.D. at 579 (citation omitted).
[15] *Areizaga v. ADW Corp.*, 314 F.R.D. 428, 437 (N.D. Tex. 2016) (citing 8B WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 2174 (3d ed. 2013)).
[16] *Id.* (quoting *Meltzer/Austin Rest. Corp. v. Benihana Nat'l Corp.*, No. 11–542, 2013 WL 2607589, at *3 (W.D. Tex. June 10, 2013) (quoting 8B WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 2177 (3d ed. 2010))).
[17] FED. R. CIV. P. 33(b)(3).
[18] *Id.* at 33(c).

an answer to an interrogatory."[19] Interrogatory responses that are not signed under oath as required are not admissible as evidence to establish lying under oath (or for any other purpose).[20] Defendants have improperly failed to provide the required verification for his discovery responses.

### 2. Requests for Production

Rule 34 authorizes a party to request another party to produce documents or items within that party's possession, custody or control.[21] The request must describe each item or category of items with "reasonable particularity."[22] The party served with written discovery must fully answer each request to the full extent that it is not objectionable and affirmatively explain what portion of an interrogatory or document request is objectionable and why, affirmatively explain what portion of the request is not objectionable and the subject of the answer or response, and affirmatively explain whether any responsive information or documents have been withheld.[23]

The responding party must produce responsive documents not only that are within that party's actual, physical possession, but also documents that are within the party's constructive possession, custody or control.[24] A party has "control" over documents or materials that it has the legal right or practical ability to obtain even though it has no copy and even if the documents are owned or possessed by a nonparty.[25] Thus, "possession, custody, and control" does not simply contemplate physical and actual possession, but rather whether the responding party could come

---

[19] *Melius v. Nat'l Indian Gaming Comm'n*, No. 98–2210, 2000 WL 1174994, at *1 (D.D.C. July 21, 2000); *accord. Walls v. Paulson*, 250 F.R.D. 48, 52 (D.D.C. 2008).
[20] *Wagner v. Boh Bros. Constr. Co.*, No. 11-2030, 2012 WL 3637392, at *4 (E.D. La. Aug. 22, 2012) (collecting cases).
[21] FED. R. CIV. P. 34(a)(1).
[22] *Id.* at 34(b)(1)(A).
[23] *Lopez*, 327 F.R.D. at 580 (citation omitted).
[24] FED. R. CIV. P. 34(a)(1).
[25] *Becnel v. Salas*, No. 17-17965, 2018 WL 691649, at *3 (E.D. La. Feb. 2, 2018) (citations omitted); *Est. of Monroe v. Bottle Rock Power Corp.*, No. 03-2682, 2004 WL 737463, at *10 (E.D. La. Apr. 2, 2004) (citation omitted).

into possession of the requested document.[26]

Of course, the court cannot compel a party to produce documents that do not exist.[27] And a party's mere disbelief or disagreement with a response is not a recognized ground for compelling discovery, "absent some indication beyond mere suspicion that the response is incomplete or incorrect"; nor is a requesting party's belief, without evidence, that the responding party's production is not complete grounds for compelling production.[28]

### B. <u>Protective Order</u>

A "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."[29] The party seeking the protective order bears the burden of showing that a protective order is necessary, "which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements."[30] In determining good cause, the court must balance the risk of injury without the protective order and the requesting party's need for information.[31]

Rule 26 offers a variety of potential options that the court may use to protect the moving party, including forbidding or limiting the scope of discovery into certain matters.[32] "As a general proposition, a district court [may] exercise its sound discretion in determining how far to restrict

---

[26] *Ruby Slipper Cafe, LLC v. Belou*, No. 18-1548, 2020 WL 4905796, at *3-4 (E.D. La. Jan. 15, 2020) (citing *Becnel*, 2018 WL 691649, at *3 ("Rule 34's definition of possession, custody, or control, includes more than actual possession or control of [documents]; it also contemplates a party's legal right or practical ability to obtain [documents] from a [non-party] to the action")).

[27] *Butler v. La. Dep't of Pub. Safety & Corr.*, No. 12-420, 2014 WL 3867552, at *1 (M.D. La. Aug. 6, 2014); *accord. Payne v. Forest River, Inc.*, No. 13-679, 2015 WL 1912851, at *4 (M.D. La. Apr. 22, 2015) ("The court cannot order the production of documents that no longer exist or, despite a diligent search, cannot be found in the possession, custody, or control of a party."); *Callais v. United Rentals N. Am., Inc.*, No. 17-312, 2018 WL 6517446, at *7 (M.D. La. Dec. 11, 2018) (same); *Terral v. Ducote*, No. 15-2366, 2016 WL 5017328, at *2 (W.D. La. Sept. 19, 2016) (same).

[28] *VeroBlue Farms USA Inc. v. Wulf*, 345 F.R.D. 406, 420 (N.D. Tex. 2021) (cleaned up).

[29] FED. R. CIV. P. 26(c)(1).

[30] *E.E.O.C. v. BDO USA, L.L.P.*, 876 F.3d 690, 698 (5th Cir. 2017) (citing *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978))).

[31] *Blanchard & Co., Inc. v. Barrick Gold Corp.*, No. 02-3721, 2004 WL 737485, at *5 (E.D. La. Apr. 5, 2004).

[32] FED. R. CIV. P. 26(c)(1)(A), (B), (D), (G).

discovery; and, in particular, the decision whether to grant or deny a request for a protective order is entrusted to the district court's sound discretion."[33] The trial court enjoys wide discretion in setting the parameters of a protective order.[34]

Courts have found compelling interests in secrecy when a case involves a minor, protected banking or financial information, trade secrets, and national security matters.[35] Courts also recognize the strong interest in keeping personal financial records from public view, particularly when the information is that of a non-party individual.[36] Entry of a Protective Order to govern financial and employment records produced during this litigation is proper, and the Court agrees that a broader blanket protective order that captures additional documents is advisable.

C. **The Particular Discovery Requests At Issue**

Unclear from Plaintiff's filing is precisely what discovery requests are at issue in his motion to compel. He discusses topics addressed not only in the discovery requests, but in emails, telephone calls and other communications as well. Notably, Plaintiff did not attach his discovery requests or Defendant's written responses to his initial filing but did attach same to his Reply. ECF No. 90-1 (4 interrogatories and 1 request for production); 90-3 (second set of interrogatories and requests for production); 90-2 (answers to first set); 90-4 (answers to second set); 90-5 (supplemental and amended answers to second set).

The major areas of contention in the motion to compel appear to be (a) the identity of Franco's employer and (b) Franco's financial records relating to any reimbursements from his employer. The relevant exchange from the first discovery set reads:

---

[33] *Nguyen v. Excel Corp.*, 197 F.3d 200, 209 n.27 (5th Cir. 1999) (citation omitted).
[34] *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) ("To be sure, Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required.").
[35] *Doe v. Crawford*, 702 F. Supp. 3d 509, 513 (S.D. Miss. 2023) (citations omitted).
[36] *St. Charles-Guillot Inv., LLC v. One Source Roofing, Inc.*, No. 23-30, 2024 WL 5440833, at *2 (E.D. La. Oct. 21, 2024) (Long, J.) (citations omitted).

9

> INTERROGATORY NO. 3: Please describe the destinations to which Lazaro Franco was traveling at the time of the subject accident and the purposes of the travel at that time.
> (A) If the travel was totally or partly for a business purpose or business mission, please give the name and address of the employer at the time of accident and explain the mission and purpose.
> ANSWER TO INTERROGATORY NO. 3: At the time of the accident, Mr. Franco was traveling from a job site of Santiago Construction to a temporary residence in New Orleans. Farmers has no direct information about Santiago Construction, although there is one listed on the Internet but neither Farmers nor its counsel can affirmatively state whether the Santiago Construction, which is identified on the Internet was actually the company that allegedly employed Mr. Franco. Mr. Franco was not "on the clock" at the time of the accident.[37]

Plaintiff appears to have issued a second set of discovery that included the same questions as earlier with additional questions, to which Franco responded a second time and later provided supplemental and amended answers.[38] The relevant excerpts from these request read:

> INTERROGATORY NO. 3: Please describe the destinations, including names and addresses to which you were traveling at the time of the subject accident and the purposes of the travel at that time.
> (A) If the travel was totally or partly for a business purpose or business mission, please give the name and address of the employer(s) at the time of accident and explain the mission and purpose.
> ANSWER TO INTERROGATORY NO. 3: According to Mr. Franco, he left work at a Santiago job site near WalMart on Tchoupitoulas Street where he was in the process of installing insulation on the inside walls of a warehouse. The work day ended and he was on his to way to a temporary residence on Delachaise St.
> (A) The travel was at the end of the workday and had no business purpose or business mission.
> SUPPLEMENTAL AND AMENDED ANSWER TO NO. 3: According to Mr. Franco, he left work with Santiago Perez at a job site near WalMart on Tchoupitoulas Street where he was in the process of installing insulation on the inside walls of a warehouse. The work day ended and he was on his to way to a temporary residence on Delachaise St.
> (A) The travel was at the end of the workday and had no business purpose or business mission.
>
> INTERROGATORY NO. 4: Please describe all reasons why you travelled to New Orleans and remained in New Orleans for the duration of the period you were in New Orleans.
> (A) Please state the date of arrival and departure.

---

[37] ECF No. 90-2 at 3.
[38] ECF No. 90-4; No. 90-5.

ANSWER TO INTERROGATORY NO. 4: Mr. Franco came to New Orleans to work at the Tchoupitoulas Street job site. He arrived in New Orleans about 3-4 months before the accident occurred and remained in New Orleans for a couple of months after the accident. He does not remember the exact dates.

INTERROGATORY NO. 6: Please describe each visit to each place on the date of the subject accident and give the place and business name, address and persons you spoke to at each location.
(A) What was discussed and what was the purpose of the visit and stop, including all business discussions, negotiations agreements and all papers reviewed or signed in relation thereto.
ANSWER TO INTERROGATORY NO. 6: On the day of the accident, Mr. Franco traveled from the temporary residence on Delachaise Street to the work site near WalMart on Tchoupitoulas. He does not recall the persons with whom he spoke at that location on the day of the accident.
(A) He went to the job site from the temporary residence on Delachaise in the morning and in afternoon he left the job site to return to the temporary residence. He was not driving his father's truck for any reason other than to go to and from work.

INTERROGATORY NO. 8:
(A) Were you paid for travel time, mileage, fuel, hotel costs, airplane costs, flight time, vehicle repairs, credit card expenses or any other business costs during the trip to New Orleans including for the time or assignment or travel at time of accident?
(B) If so, please explain the details for each.
(C) Were you on call at time of accident and if so, to whom, and to whom did you communicate on all matters at time of accident and on that day?
(D) Describe any on call responses you made that day, who gave you any assignment and the work performed.
ANSWER TO INTERROGATORY NO. 8:
(A) I was paid nothing for my travel from Sand Springs Oklahoma to New Orleans. If the questions includes the entire time that I was in New Orleans, then the answer remains no.
(B) Not applicable.
(C) I was not on a cell phone at the time of the accident.
(D) I was not on any on-call responses that day. I worked on the job only after arriving at the job site and until I left the job site. In going to and from work, I used my father's truck. No vehicle was provided to me by Santiago while working on this job.  Additionally, I did not use the vehicle to run errands for Santiago.
SUPPLEMENTAL AND AMENDED ANSWER TO INTERROGATORY NO. 8:
(A) I was paid nothing for my travel from Sand Springs Oklahoma to New Orleans. If the question includes the entire time that I was in New Orleans, then the answer remains no.
(B) Not applicable.
(C) I was not on a cell phone at the time of the accident.

> (D) I was not on any on-call responses that day. I worked on the job only after arriving at the job site and until I left the job site. In going to and from work, I used my father's truck. No vehicle was provided to me by my employer while working on this job. Additionally, I did not use the vehicle to run errands for my employer.
>
> INTERROGATORY NO. 9:
> Were you provided with a credit or debit card for travel and business costs by any party or entity and if so please identify the name, address and contact person(s) you dealt with in obtaining the card, to whom you submitted expenses on the card, and to whom did you provide supporting documentation for each card expense and entry during the trip.
> (A) Did you have your own business cards or personal cards used for business and please give full card name, card issuer and its business address.
> ANSWER TO INTERROGATORY NO. 9: I was not provided with a credit or debit card, nor did I incur any business costs/expenses for which I was reimbursed.
>
> INTERROGATORY NO.12:
> (A) Describe the nature of your business and whether you were an employee or independent contractor at the time of the accident?
> (B) Did you work for different employers or contractors on the date of accident? If so, give the name and address of all parties for whom you were on business for during the trip and date of accident.
> (C) Describe details of each work activity.
> (D) Were you an insurance adjuster or claim representative and, if so, which and what did you do?
> ANSWER TO INTERROGATORY NO. 12:
> (A) I was an employee of Santiago Construction Company but was not engaged in any work or business of Santiago at the time of the accident.
> (B) I did not work for different employers or contractors on the date of the accident.
> (C) I was installing insulation in a warehouse near the WalMart on Tchoupitoulas Street on the date of the accident. The work was in connection with my employment with Santiago.
> (D) No, I was not an insurance adjuster or claim representative.
> SUPPLEMENTAL AND AMENDED ANSWER TO INTERROGATORY NO. 12: (A) I was doing construction work with Santiago Perez who does business as Coastline Construction and Renovation, Inc.
> (B) I did not work for different employers or contractors on the date of the accident.
> (C) I was installing insulation in a warehouse near the WalMart on Tchoupitoulas Street on the date of the accident. The work was in connection with my employment with Coastline Construction, Inc.
> (D) No, I was not an insurance adjuster or claim representative.

The second set of discovery included several additional requests for production:

> REQUEST FOR PRODUCTION NO. 3: Please provide all documentation relating to Interrogatory No. 10 [relating to past accidents, which defendant answered were

none] and all documents for the trip, including date of accident, gas purchases, hotel purchases, other business purchases and documents and logs for date of accident and time of accident.

RESPONSE TO REQUEST FOR PRODUCTION NO. 3: There are no documents relating to Interrogatory No. 10. Lazaro Franco, through his attorney, objects to the balance of the request as being excessively broad, but states that he retained no documents pertaining to gas purchases, hotel purchases, or other business purchases, because there were none, nor any documents or logs as described.

SUPPLEMENTAL AND AMENDED RESPONSE TO REQUEST FOR PRODUCTION NO. 3: There are no documents relating to Interrogatory No. 10, but Lazaro Franco sometimes used a Chase Bank debit card to purchase gas for the trip from Sand Springs to New Orleans. He was not reimbursed by his employer for any of the gas purchases. Lazaro Franco, through his attorney, objects to the balance of the request as being excessively broad, but states that he retained no documents pertaining to gas purchases, or other business purchases, because there were none, nor any documents or logs as described. Lazaro Franco has provided plaintiff's counsel with the number of his debit card but the release of any information from its use is governed by a protective order.[39]

During the September 3, 2025, hearing,[40] defense counsel conceded his mistake when he independently sought to identify Franco's employer based on Franco's statements that he did construction work for Santiago. Counsel has apologized for his mistaken identification of Santiago Construction as Franco's employer when in reality the owner of the company was named Santiago Perez with a company named Coastline Construction and Renovation, Inc. or Coastline Construction, Inc,[41] and Franco confirmed that information during his deposition. Plaintiff's own investigation revealed that Coastline Construction Inc. changed its name to Coastline Construction and Renovation, Inc. in 2016.[42] Thus, at this point, Plaintiff now has sufficient information to enable him to identify Franco's employer, and no further discovery response is necessary to obtain that information.

---

[39] *Id.*
[40] The Court heard argument on Plaintiff's Motion for Leave to File Supplemental and Amended Complaint and Defendants' Motion to Compel Plaintiff to Appear for a Rule 35 Examination. ECF No. 76.
[41] *See* ECF No. 90-5 at 6 (Supplemental Response to Interrogatory No. 12).
[42] ECF No. 90 at 7; *see* ECF No. 90-9.

The second major area at issue in the motion to compel is Plaintiff's request for Franco's documents for the trip, including date of accident, gas purchases, hotel purchases, other business purchases and documents and logs for date of accident and time of accident. ECF No. 90-3 (Request for Production No. 3). In response, Franco has stated that he sometimes used a Chase Bank debit card to purchase gas for the trip from Sand Springs to New Orleans and agreed to provide same under a protective order, but affirmatively stated that he was not reimbursed by his employer for any of the gas purchases. Franco also asserted that he did not retain documents pertaining to gas purchases nor were there any other documents reflecting business purchases or logs as requested.

Plaintiff's request for these records is not limited in time and thus is improperly overbroad. Further, to the extent that these records do not reflect any reimbursement by his employer, they would appear to be irrelevant to the respondeat superior issue as the existence of any charges or costs incurred have no relation to any claim or defense in this case. Plaintiff is, however, entitled to obtain evidence of payments from Franco's employer for the relevant month of the accident as well as evidence of any charges for which Franco was reimbursed by his employer for the month of the accident at issue. Franco must produce copies of any such receipts or, in the absence of retained receipts, copies of his credit card statements reflecting such expenses as well as reimbursements or reimbursement requests from his employer. This financial information must be produced under the terms of a Protective Order, precluding disclosure of same outside of this litigation or for any purpose other than this litigation.

Control of discovery is committed to the sound discretion of the trial court.[43] If a court has concerns about the reasonableness of a party's efforts in responding to discovery, the court may

---

[43] *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009).

require the party to certify the manner and completeness of its production.[44]  Thus, when a party or counsel represents that documents do not exist, the court may require a certification or "confirm[ation]" that the discovery at issue does not exist.[45]  If the other party has or acquires evidence that the response is incomplete or that the affidavit or representation is false, then other remedies may be sought by motion.[46]  Given Franco's assertions that responsive documents do not exist, the Court will require a certification by both Franco and his counsel as to the efforts undertaken to locate responsive documents and confirmation that same were not located after undertaking such efforts.

The only remaining item is Plaintiff's request for a more complete response to Interrogatory No. 8.  Plaintiff asked four separate questions under Interrogatory No. 8.  Franco's response to 8(A) is unclear to the extent he appears to limit his response to payments only during his travel from Sand Springs Oklahoma to New Orleans rather than during the relevant month of employment at issue.  Subsections (C) and (D) ask whether Franco was "on call" at the time of the accident, not whether he was on a telephone call.  In the employment context, an employee is "on call" when the employee is available to work if called upon by the employer, but is not actively working, which may or may not be compensable depending on the level of restrictions placed on

---

[44] *See, e.g.*, *Ramirez v. Cnty. of Marin*, No. 10-2889, 2011 WL 1522347, at *1 (N.D. Cal. Apr. 20, 2011) ("This order sets a deadline for Finnegan to certify completion of his document production . . . ."); *Who Dat Yat Chat, LLC v. Who Dat, Inc.*, No. 10-3333, 2011 WL 4018320, at *4 (E.D. La. Sept. 9, 2011) (ordering "a written certification" regarding the efforts made "to identify and extract" responsive electronically stored information); *Gibson v. City of Louisville Metro*, No. 09-685, 2011 WL 1827484, at *1 (W.D. Ky. May 12, 2011) (dismissing case because party failed to comply with court's "order to certify completed discovery").
[45] *Nguyen v. La. State Bd. of Cosmetology*, No. 14-80, 2016 WL 67253, at *2 (M.D. La. Jan. 5, 2016) (requiring plaintiff to "confirm that the requested information does not exist"); *see also Callais*, 2018 WL 6517446, at *7 (ordering qualified representative to provide a sworn certification that no responsive documents exist); *Brookshire v. Jackson Pub. Schs.*, No. 13-772, 2015 WL 11018443, at *1 (S.D. Miss. May 8, 2015) ("If the document does not exist, then Defendants are to certify that the document does not exist."); *Beasley v. First Am. Real Est. Info. Servs., Inc.*, No. 04-1059, 2005 WL 1017818, at *4 (N.D. Tex. Apr. 27, 2005) ("[D]efendant is entitled to an unequivocal representation . . . that the documents specified in this request for production do not exist.").
[46] *Henderson v. Compdent of Tenn., Inc.*, No. 97-617, 1997 WL 756600, at *1 (E.D. La. Dec. 4, 1997) (denying motion to compel based on representation that documents that do not exist and noting other remedies are available if representation is untrue).

the employee. Franco's response to subsection (C) indicates a misunderstanding of the question asked, but he appears to have understood the question in the context of subsection (D). Franco, however, responded that he had no on-call responses that day rather than answer whether he had any on-call duty at the time of the accident, which is a different question. Franco must provide supplemental responses to Interrogatory 8 to identify any employer payments to Franco for travel time, mileage, fuel, hotel costs, airplane costs, flight time, vehicle repairs, credit card expenses or any other business costs for the month of the accident only. Likewise, Franco must provide supplemental responses to subsections (C) and (D) to identify whether he had "on call" duties for his employer on the day of the accident.

### III. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Plaintiff's Motion to Compel is GRANTED IN PART AND DENIED IN PART as outlined herein.

IT IS FURTHER ORDERED Defendant Franco must serve supplemental discovery responses as stated herein, including an Interrogatory Verification and Request for Production Certification, within 14 days.

IT IS FURTHER ORDERED that Defendants' Motion for Entry of a Protective Order is GRANTED. The Protective Order will be issued separately.

New Orleans, Louisiana, this __2nd__ day of October, 2025.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

16